Robert Jobe appearing on behalf of the petitioner Tejinder Singh. This is another case where the immigration judge made no finding of past persecution. She said that there was no nexus, that whatever happened to him it wasn't because of his political opinion. Now the board, they didn't adopt that analysis and instead they assumed, as in the second case for purposes of argument, that the petitioner had been persecuted on account of a protected ground. But again, in analyzing whether this petitioner could relocate safely, both the immigration judge and the board focused entirely on the Punjab police, which is particularly strange because in this case the petitioner was never targeted by the Punjab police. All of his past persecution stems from attacks by private actors, the Congress party. So it's certainly our perspective that in assessing whether he could safely relocate, given the assumption that he was persecuted on account of his political opinion by members of the Congress party, the analysis has to be, well, if he moves to another state and he engages in these same sorts of political activities that got him into trouble in Punjab, would he be at risk from the Congress party or other private actors? Incredibly, however, neither the immigration judge or the board focused entirely on whether the Punjab police would engage in some sort of long-arm law enforcement and track this individual down to wherever he may relocate. For example, the immigration judge said only high-profile individuals would have any substantial grounds to fear persecution from local authorities. In this case, when she's referring to local authorities, she's talking about if they were to relocate to India. But that's not the question. Again, the question is, would he be in danger of Congress party members in another area if he engages in the same activity? The BIA parroted the immigration judge's finding and they said that Singh was not engaged, this is the extent of their analysis, Singh was not engaged in activities that would implicate him as a high-profile member of his party, such as to fall within the category of individuals that the local Punjab police would seek out in other parts of the country. Well, that's problematic for a couple different reasons. First, it's focused entirely on the activities that he previously engaged in. The board said that he has not engaged in activities that would implicate him, blah, blah, blah. But he testified that he would, if returned to India, engage in activities that would implicate him in other areas of the country. The board completely ignores that. But more importantly, its analysis is entirely focused on whether the Punjab police would seek him out in other areas of the country, notwithstanding the fact that this gentleman's past persecution claim is predicated entirely on the three attacks he suffered at the hands of the Congress party, because neither the immigration judge nor the board considered whether he would be able to freely engage in those activities without further attacks at the hands of the Congress party. This has to go back. In some of these cases, the government keeps arguing that, oh, this is a question of substantial evidence. No, it's not. There's a legal question here, and the legal question is, is the board, did the board or the immigration judge properly apply the presumption? Did they consider whether he would face future persecution based on the original claim? When there's a showing of past persecution, once again, we have to presume that the individual is at risk, according to the regulations, based on the original claim. The original claim here was that he was attacked by members of the Congress party for engaging in Akali Dalman activities. You have to presume, based on the original claim, that he would be in danger of further attacks of that sort if he relocates. The board and the immigration judge never applied such a presumption. They don't even discuss in their internal relocation analysis whether he might be in danger at the hands of the Congress party. They focus exclusively on the Punjab police, and so it's our view that we're not weighing the case here. We're suggesting that the board and the immigration judge committed legal error in this case and all these other cases by not properly applying the presumption. Either they didn't even decide whether there was past persecution, as in the first case, or if they did, they didn't analyze the presumption based on the original claim as the regulations require. So, based on what you said in the earlier cases, it sounds like, obviously, from your perspective, the BIA erred because they didn't analyze persecution at the hands of the Congress party. They focused on the police, who were not involved at all. But carrying your analogy further, though, they would not have to analyze the role of the police at all, right? Because they were never involved in this case, either the Punjab police or the state police. In assessing whether he would – can I just grab my rags here? The – here's what – here's how the regulations set out the presumption. They say that a victim of past persecution shall be presumed to have a well-founded fear of future persecution on the basis of the original claim. And then it goes on to explain, however, if the applicant's fear of future persecution is unrelated to the past persecution, then the applicant bears the burden of establishing that the fear is well-founded. So the question is whether the threat in the area of relocation is unrelated to the past persecution claim. Then he would have to have, as part of his case, indicate why he was concerned about the police, right? Well, if you look at the case that I submitted last week in a 28-J letter, matter of AT, in that case, they interpret the basis of the original claim as meaning on the same statutory grounds. So if he was persecuted in Punjab for his activities on behalf of a Khalid al-Man, he's presumed to be at risk for those same sorts of activities, no matter where he relocates. It doesn't matter who does it. You could have a visiting American that didn't like people from the Man party. They'd have to protect him from them. Unless the claim is unrelated. So, for example, in matter of NMA, in that case, for example, the guy was persecuted because he was opposed to the communist government in Afghanistan that was in power. He was persecuted on account of political opinion. But then when, by the time his case went to the board, the communists had been overthrown and the Taliban was in power, and he was expressing a fear of the Taliban. And there they said, well, no, this is a different claim. It's not related to your anti-communism. It's related to a different kind of political or ethnic claim. That's the analysis that the judge had to engage in. But in none of these cases did they engage in that analysis. They either didn't assess whether there's past persecution, or they never characterized exactly what the original claim was, or they never assessed whether or not the harm that this person might face in the future was related or not. These are all legal errors. They did not engage in the analysis that they were required to engage in. What's the regulation again, please, that you cited? That's 1208.13B1. 1208.13B1. Thank you. Your Honors, may it please the Court, Anita Natunla for the respondent. Again, Your Honor, substantial evidence does support the agency's decision that Mr. Singh, sorry, that the DHS did rebut the well-founded fair presumption by following the relevant regulations and the governing law. Well, does the government have a problem, though, if he's correct? His point, from my perspective, was, in this case, the BIA analyzed what the Punjab police could do, or perhaps, by implication, the state police. But he claims that the police weren't involved in any persecution of this particular petitioner. It was just members of the Congress Party. And the members of the Congress Party's role was not analyzed at all by the BIA. Why is he wrong? He's wrong, Your Honor, because although he was beaten by the Congress Party members, his claim before the immigration judge and the board was that these, the police, the police are controlled by Congress Party members. And so when, or if he lives outside in this substantially better location, it's the police who will be able to find him, because when he has to register for tenant verification drives or find a job, the police will send back his records to his village, and that is how he will come to the attention of. So you're coming at this in the opposite way that he does, but you get there in the same way. He's saying, yeah, the Congress Party was involved, but they also had to take into account the police because they're part of the same issue. In other words, if you're going to be persecuted by anybody, they have to take that into account. And the police could have been involved. You're saying the same thing, only the opposite direction. They didn't specifically talk about the Congress Party. They talked about the police, but they're all part of one package because they were going to persecute him. Is that correct? That is correct. And just to go a step further, Your Honor, the record shows again that India is made up of these jurisdictions, and the police operate in these various jurisdictions differently. And so the evidence submitted by DHS shows that, again, in order for Mr. Singh to come to the attention of these other police living outside Punjab, he would have to be a high-profile militant or a high-profile leader. He may be for the police, but what about the members of the Congress Party? I mean, they were all over the place, probably still are. They're not as much in power, but they're still all over the place. So if somebody's an uncle of somebody that lives in some other part of India, and they said, there's this guy that was over here before, and he was raised in all kinds of gain, and we understand he's over your way, take care of him. Why shouldn't that be an issue? Because in the country reports and the other evidence submitted by DHS, it's telling, Your Honor, that there is no mention of any attacks, persecution, or targeting of SADA party members by Congress Party individuals. And so this was also — But I thought the — I didn't think the record talked about the Congress Party. It talked about the police. Yes, Your Honor, but I'm saying that DHS submitted — And they're the same people, basically. I'm sorry. I was saying that the absence of any evidence in the record about the Congress Party members attacking SADA Party members would be one way that the agency or that DHS rebutted the presumption by — Wait a minute. You have the burden to show, if there's past persecution, that you've satisfied that he's not going to be persecuted in the future by relocating. That's correct. And it has to be reasonable. Now, in this particular case, your opponent has said the reason for the attack was that members of the Congress Party, not the police, attacked him. You're now saying that by looking at whether or not he's a high-profile terrorist, which the police would look at based upon the country report, is enough to respond to the concept that members of the Congress Party would not attack him and that the very absence of evidence basically was evidence? So, Your Honor, my answer, just to clarify, would be twofold in that, one, his claim was that he would be reached or he would not be unable to relocate, and one, because these Congress Party members controlled the police. And that's why — that was the claim that he articulated before the agency, and so that's why the agency examined the police and their long-arm enforcement. So you're relying upon his statement that the Congress Party controlled the police. Basically, they were one and the same. Is apparently what he's saying. And so he's saying that when he relocates, he will be unable to find a job or find an apartment because when he does so, wherever he is, whatever jurisdiction, they will go back to his hometown in Punjab, which is controlled by these Congress Party members, and that's how they will supply the information that he has. What's your reference in the record that's your best evidence that the Congress Party controls the police, and therefore if you talk about the police, you're also talking about what the Congress Party would do? Oh, no, Your Honor, I'm saying this is Mr. Singh's claim. No, I understand that, but I'm just saying, where in the record does he make that express claim? Oh, does he make the express claim? In other words, they're basically one and the same. The Congress Party controls the police. The police are the Congress Party, basically. Well, Your Honor, at page 150, 151, when he's asked, at that point he's living in a different state, and he's asked who is it that he fears. On page 151, he says, anywhere I would have gone and worked, I would have gone to ask for a job. And first to find out from the local police station from where I was working. And then the judge says, well, why did that matter? And then Mr. Singh says, because once I've gone to this local police station, they would have to then take the report back to his local police station in Punjab, and that's how he would be found, and that's why he fears. It's pretty unrealistic, probably, to think that if he goes to someplace else, some other place in India, that the Punjab police are going to go after him. Absolutely, Your Honor. I mean, that's what you have focused on, but is that all that he focused on? I mean, the issue really is whether someone else, if the government has the burden of proof of showing that the Congress Party or the central police or the police of some other state wouldn't go after him. I mean, that's your burden, I guess. That's the burden that the government has, and DHS. Why don't we talk about that instead of worrying about the Punjab police? Okay. And so just to cite to the record some of the evidence that the Department of Homeland Security supplied is in the U.K. Sorry. It's in the country reports where it says that generally individuals may criticize the government publicly or privately without reprisal at 183 in the record. At page 189, again, it states that the law provides for freedom of internal movement and the government generally respects these rights. At page 236 in the record, it states that where an individual's fear is a local police and the individual is not of interest to the central authorities, that relocation is feasible and would not be a problem. Again, at 236 in the record, that Punjabi Sikhs are able to relocate and that there are Sikh communities all over India. 236 of the record, again, internal relocation to escape the attention of local police in their home country would not be unduly harsh. The police force have neither the resources nor the language abilities to perform background checks on people arriving from other parts of India. There's no system of registration for citizens. Often people have no identity cards. It's in the record, again, that a lot of times these police departments or offices keep their ledgers in handwritten form. And so it would be virtually, like you said, impossible or very difficult if somebody or if the police in the local area were to confirm an identity. They just don't have the infrastructure or the resources to do so. Well, that seems to me to go to what happened in the past. The issue is how they would react to his carrying out the same activities in the future. Yes, Your Honor. And so the agency did note that he would be able to, that his claim, and this is page three of the board decision, that he would, that they say he was not engaged in activities that would implicate him as a high-profile member of his party, such as to fall within the category of individuals that the local Punjab police would seek out in other parts of India and the immigration. And so that plus, like I mentioned in these other instances in the record, are talking about a forward-looking fare. They're saying that in these — Let's focus on the Punjab police again. Because that's his fare, Your Honor. He's saying that if he's able, if he relocates or he's not able to relocate because when he moves outside the Punjab, they will get in touch or contact his local police in Punjab, and that is how they would find him. But the record — When asked by members of the Congress party, he expressed the fear that when he went to look for work outside the Punjab, he would have to register with the police, that the police there would contact the police in Punjab to find out about him, and the people basically in the Congress party would then know because they were in league. Is that right? Exactly. That's his claim. I see my time is up, Your Honor, but just again to show, if I may just repeat the point again, that there's no — the reports or the country evidence reports show that there's no infrastructure, that the police, the central authorities will only do so if somebody is a high-profile militant or leader, which Mr. Singh does not claim to be. Let me ask my colleagues. Do either of my colleagues have additional questions for the government? No. Okay. Thank you very much. Thank you. Thank you so much, Joe. We've got a little bit of rebuttal time. I just want to address the exhaustion question. Okay. On page 17, this is a petitioner's brief to the BIA. He argued that the ruling Congress party had targeted him in an attempt to squelch his activities on behalf of a Khalid al-Mann, and then he goes on to argue that it's unreasonable to expect him to return to India and to be forced to live in a state of hiding merely to avoid detection by the Congress party or the police — not the Punjab police — or the police who do the party's bidding. He clearly raised the issue of whether he'd be harmed by the Congress party. It's just that neither the immigration judge nor the board addressed it. Okay. All right. Thanks to both of you for your argument in this case. The case just argued is submitted.
judges: Fisher, M. Smith, Bucklo